

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH ANDERSON,<br><br>　　　　　Plaintiff,<br>vs.<br><br>EQUINOX HOLDINGS, INC., a Delaware corporation; EQUINOX FITNESS GLENDALE, INC., a California corporation; EQUINOX FITNESS IRVINE, INC., a California corporation; and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No.: 2-18-cv-03759-SVW-RAO<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

I.  Introduction

On October 9 and 10, 2018, the Court held a bench trial in this action. Having carefully reviewed and considered the evidence and the arguments of counsel as presented at trial and in their written submissions, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

II. Findings of Fact

A.  Plaintiff's Employment with Equinox

1. Plaintiff Deborah Anderson was hired as a Membership Advisor by Defendant on January 10, 2013, working at the Irvine, California club.

1

2. On September 2, 2014, Plaintiff transferred to the Glendale club and continued working as a Membership Advisor.

3. From September 2, 2014 through March 2016, General Manager Melvyn Myles supervised Plaintiff.

4. On October 5, 2015, Plaintiff was promoted to Senior Membership Advisor.

5. From March 2016 until February 2017, General Manager Andrea Burns supervised Plaintiff.

6. Plaintiff was an hourly, non-exempt employee.

7. Plaintiff earned $14.47 per hour.

8. Membership Advisors and Senior Membership Advisors are responsible for selling memberships for the club. They do this by following up on leads that may come to Equinox through its internet site or directly to the Glendale club by telephone or walk-in prospects. Membership Advisors and Senior Membership Advisors have monthly sales goals that they are expected to meet.

9. A Membership Advisor's duties include outreach. The term outreach as used by Equinox with respect to sales activities refers to partnering with any appropriate company, organization, or business to help generate "leads" (i.e., future club members). Outreach may be informal in the sense that Membership Advisors may speak with leads at local businesses, but all such outreach activities require prior approval and input from the General Manager.

10. Throughout Plaintiff's employment as a Membership Advisor and Senior Membership Advisor, Defendant utilized an employee timekeeping system known as Ultipro for hourly employees, including Plaintiff, to clock in at the beginning of their work day, clock out at the beginning of their meal break, clock back in at the end of their meal break, and clock out upon completion of their work each day.

11. Plaintiff could not access Ultipro to clock in unless she was physically in the gym facility.

12. In addition to Ultipro, Defendant had employees use manual time sheets when

they were not able to access Ultipro to record their time.

13. Plaintiff used manual time sheets to record her time on multiple occasions and was paid for the time manually recorded.

**B.  No Off-the-Clock Work**

14. Defendant paid Plaintiff for all of the hours she reported, including overtime as appropriate.

15. Defendant did not instruct, require, or allow Plaintiff to work off the clock.

16. Plaintiff had remote access to her work email account during her employment with Equinox, which allowed Plaintiff to access her work email while she was off the clock.

17. Plaintiff testified that she would, on a nearly daily basis, review, check, and respond to work emails when she was off the clock. In support of this testimony, Plaintiff introduced Exhibit 17, which consisted of approximately 19,793 pages of email communications that she alleges were sent or received while she was off the clock. However, Plaintiff provided no analysis of these emails. In fact, Plaintiff admitted in her direct testimony that, "[d]ue to the volume of pages, [she was] reluctant to confirm with absolute certainty" that they were all work-related emails. In addition, Plaintiff provided no evidence regarding the amount of time she spent reading, acting on, and responding to these emails; the only evidence in the record is the emails' timestamps. Thus, Plaintiff's allegation that these emails establish that Plaintiff worked off the clock is entirely speculative.

18. In addition to work email, Plaintiff was provided access to Salesforce, which was a software tool used by Equinox to allow Membership Advisors and their general managers to track leads to prospective members and efforts by Membership Advisors to take ownership of a lead and maintain contact until a sale was completed. The process of taking ownership of a lead was called "converting" a lead. Plaintiff was able to access Salesforce remotely and while off the clock.

19. Plaintiff testified that, on an almost daily basis, while off the clock, she logged into Salesforce to conduct work.

20. Plaintiff estimated that she conducted an average of 40 hours of off-the-clock work on a weekly basis throughout her employment at Equinox.

21. Plaintiff never recorded or reported to Defendant, by any means, any of the time she claims she worked off the clock, nor did she otherwise request to be paid for it while employed.

22. The Court finds that Plaintiff's testimony regarding alleged off-the-clock work was not credible and thus does not credit Plaintiff's testimony. The Court in this regard has considered, among other things, the manner in which she testified, her interest in the outcome of the case, and the reasonableness of her testimony in light of all of the evidence. The Court has also considered the relevant factors in Section 1.14 of the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition), located at http://www3.ce9.uscourts.gov/juryinstructions/sites/default/files/WPD/Civil_Instructions_2018_9_0.pdf.

**C.  Meal and Rest Breaks**

23. At all relevant times, Defendant maintained lawful meal and rest break policies applicable to Plaintiff and other employees.

24. Defendant provided duty free meal and rest breaks compliant with California law to Plaintiff.

25. Defendant did not require Plaintiff to work through meal breaks or rest breaks, nor did Defendant interfere with Plaintiff's taking meal breaks or rest breaks.

26. Plaintiff's timeclock entries in Ultipro demonstrate that Plaintiff was provided and took meal breaks as required by California law.

27. Plaintiff's timeclock entries in Ultipro and Plaintiff's wage records demonstrate that Plaintiff was paid for all hours she worked and reported.

28. Plaintiff repeatedly violated Defendant's timeclock and meal break policies by failing to properly punch in or out and failing to take timely meal breaks.

29. Defendant issued Plaintiff multiple and escalating warnings for her timekeeping

violations.

30. Defendant repeatedly reminded Plaintiff to properly clock in and out for work and to take her meal breaks in a timely fashion.

31. Plaintiff was provided with Defendant's policies pertaining to accurately recording all time worked, overtime, and meal and rest breaks.

32. The Court finds that Plaintiff's testimony regarding meal and rest breaks was not credible and thus does not credit Plaintiff's testimony. The Court in this regard has considered, among other things, the manner in which she testified, her interest in the outcome of the case, and the reasonableness of her testimony in light of all of the evidence. The Court has also considered the relevant factors in Section 1.14 of the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition), located at http://www3.ce9.uscourts.gov/juryinstructions/sites/default/files/WPD/Civil_Instructions_2018_9_0.pdf. Based on the same considerations and factors, the Court finds that the testimony of Defendant's employees was credible.

### D. Cell Phone Reimbursements

33. Membership Advisors and Senior Membership Advisors were not expected by Defendant to use their personal cell phones for work.

34. No manager or supervisor ever instructed Plaintiff to use her personal cell phone for work.

35. Though Plaintiff made requests for reimbursement of business expenses on multiple occasions, she never requested reimbursement for personal cell phone usage.

36. Membership Advisors and Senior Membership Advisors would receive emails containing leads for prospective new members that would contain a mobile link. Plaintiff received such emails.

37. Plaintiff testified that she communicated with her managers and prospective members via text messages, and so used her cell phone for work.

38. Plaintiff estimated that 75 percent of her cell phone use was work-related.

5

39. The Court finds that Plaintiff's testimony regarding work conducted with Plaintiff's cell phone was not credible and thus does not credit Plaintiff's testimony. The Court in this regard has considered, among other things, the manner in which she testified, her interest in the outcome of the case, and the reasonableness of her testimony in light of all of the evidence. The Court has also considered the relevant factors in Section 1.14 of the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition), located at http://www3.ce9.uscourts.gov/juryinstructions/sites/default/files/WPD/Civil_Instructions_2018_9_0.pdf.

### E. Travel Reimbursements

40. Plaintiff was not reimbursed for 172 miles traveled per year from 2013 through February 11, 2017.

### F. Termination

41. Plaintiff was terminated on February 12, 2017.

42. Plaintiff's causes of action for unpaid wages and failure to provide meal and rest breaks are limited to Plaintiff's employment with Defendant from November 18, 2015 through her termination on February 12, 2017.

## III. Conclusions of Law

### A. Overtime Pay Pursuant to California Labor Code §§ 510, 1194, and 1198

43. Under California law, unlawful failure to pay wages in violation of Industrial Welfare Commission Wage Order and California Labor Code §§ 510, 1194, and 1198 requires that: (1) Plaintiff performed work for Equinox; (2) Plaintiff worked overtime hours; (3) Equinox knew or should have known that Plaintiff had worked overtime hours; (4) Plaintiff was not paid for some or all of the overtime hours worked; and (5) the amount of overtime pay owed. *See* CACI 2702.

44. To prevail on an off-the-clock claim, a plaintiff must prove that her employer had actual or constructive knowledge of the alleged off-the-clock work. *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007).

45. Moreover, Plaintiff must provide a reasonable estimate of the claimed off-the-clock time. It is Plaintiff's burden to "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

46. Plaintiff failed to demonstrate that Equinox knew or should have known that she was working off the clock. Although she presented evidence that her managers were aware of her prescribed work schedule, Plaintiff failed to meet her burden to establish that they knew or should have known that she was working while off the clock.

47. Even if the Court had credited Plaintiff's allegation that she performed off-the-clock work and that her managers knew or should have known, Plaintiff failed to satisfy her burden to produce sufficient evidence establishing a reasonable estimate of her claimed off-the-clock work because her testimony was found not credible. Plaintiff contends that this is an improper basis to deny all damages under *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986), which established a burden-shifting framework. However, under *Brock*, the burden shifts to an employer to show the precise number of hours worked *only after* a plaintiff "proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of a just and reasonable inference.*" *Id.* (emphasis in original). Plaintiff's estimate of 40 hours of off-the-clock work on a weekly basis is not supported by sufficient evidence and so is not a just and reasonable inference.

B. **Meal Breaks Pursuant to California Labor Code §§ 226.7, 512, and Section 11 of the IWC Wage Order**

48. Under California law, violation of Industrial Welfare Commission Wage Order and California Labor Code §§ 226.7 and 512 requires that: (1) Plaintiff was a non-exempt employee; (2) Equinox failed to provide Plaintiff an uninterrupted meal break before the fifth hour of work and, if applicable, a second meal period before the end of the tenth hour; and (3) Equinox failed to pay Plaintiff one additional hour of pay at Plaintiff's regular rate of

compensation for each workday that the meal period was not provided.

49. Equinox's "obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work is done." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1017 (2012).

50. Equinox made all duty free meal periods required by the California Labor Code and applicable Wage Order available to Plaintiff, and did not interfere with or require Plaintiff to work during any rest break in violation of California Labor Code § 226.7.

51. Plaintiff failed to establish that she was not provided meal breaks in compliance with California law because her testimony was found not credible.

**C. Rest Breaks Pursuant to California Labor Code § 226.7, Section 12 of the IWC Wage Order**

52. Under California law, violation of Industrial Welfare Commission Wage Order and California Labor Code §§ 226.7 and 512 requires that: (1) Plaintiff was a non-exempt employee; (2) Equinox failed to provide Plaintiff rest period(s) of ten consecutive minutes for each four hours of work or major fraction thereof; and (3) Equinox failed to pay Plaintiff one additional hour of pay at Plaintiff's regular rate of compensation for each workday that the rest period(s) was/were not provided.

53. Pursuant to *Brinker*, Equinox only has an obligation to "authorize and permit" rest periods. Equinox complied with that requirement because it authorized employees to take rest breaks and made the rest breaks available. *Brinker*, 53 Cal. 4th at 1033.

54. Equinox made all duty free rest periods required by the California Labor Code and applicable Wage Order available to Plaintiff, and did not interfere with or require Plaintiff to work during any rest break.

55. Plaintiff failed to establish that she was not provided rest breaks in compliance with California law because her testimony was found not credible.

**D. Itemized Wage Statements Pursuant to California Labor Code §§ 226 and**

1174

56. Because Plaintiff failed to meet the burden necessary for her underlying wage claims, the derivate imposition of Section 226 penalties is barred.

### E. Paid Wages Pursuant to California Labor Code §§ 203 and 204

57. Because Plaintiff failed to meet her burden necessary to establish her claim for unpaid wages, the derivative imposition of waiting time penalties pursuant to California Labor Code Section 203 is barred.

### F. California Business and Professions Code §§ 17200-17208

58. Because Plaintiff failed to meet her burden necessary to establish unpaid wages, meal break violations, rest break violations, or failure to reimburse cell phone expenses, Equinox did not engage in any unfair, unlawful, or fraudulent business practices prohibited by the California Business and Professions Code Section 17200.

### G. Cell Phone Reimbursement Pursuant to Labor Code § 2802

59. An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties. Before an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred the expenses. *Stuart v. Radioshack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009).

60. Plaintiff must prove the following elements: (1) Plaintiff incurred business expenses; (2) the business expenses were in direct consequence of the discharge of her duties; (3) the business expenses were necessary; and (4) Defendant knew or should have known that the expenses were incurred by Plaintiff. Labor Code § 2082.

61. Plaintiff did not meet her burden of establishing the amount she was entitled to be reimbursed for cell phone expenses. Plaintiff's evidence regarding claimed damages was found to be speculative. Therefore, Equinox has not violated Labor Code Section 2802 for cell phone reimbursement.

62. Plaintiff's objection to ¶ 61 is overruled for the reasons discussed in ¶ 47 and

because the Court did not find Plaintiff's estimate that 75 percent of her cell phone use was work-related to be credible.

### H. Mileage Reimbursement Pursuant to Labor Code § 2802

63. An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties. Before an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred the expenses. *Stuart v. Radioshack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009).

64. Plaintiff must prove the following elements: (1) Plaintiff incurred business expenses; (2) the business expenses were in direct consequence of the discharge of her duties; (3) the business expenses were necessary; and (4) Defendant knew or should have known that the expenses were incurred by Plaintiff. Labor Code § 2802.

65. Plaintiff offered credible evidence to support her claim for mileage reimbursement for 172 miles per year between June 9, 2013, the date Plaintiff filed her original complaint, through February 22, 2017. Courts have the discretion to "believe everything a witness says, or part of it, or none of it." Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition) § 1.14; *see also Export Dev. Canada v. E.S.E. Elecs.*, No. CV 16-02967-BRO (RAOx), 2017 WL 3868795, at *8 (C.D. Cal. Sept. 5, 2017). Plaintiff's estimate of 172 miles per year of unreimbursed mileage is reasonable in light of all of the evidence and was corroborated by the testimony of other witnesses, such as Nick Gilbreath.

## IV. Conclusion

In light of the Court's findings of fact and conclusions of law, the Court ORDERS the parties to confer and submit a Proposed Judgment. The parties shall submit the Proposed Judgment by January 14, 2019.

IT IS SO ORDERED.

Date: January 2, 2019

_____
HON. STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE